We'll hear the first case, Dix v. Peters. May it please the Court, my name is Armin Nazarian. I am... Speak right into the microphone, please. Yes, Your Honor. My name is Armin Nazarian. I'm the attorney for the appellants, Corey Dix and Ruby Dix. This is an appeal from a decision of the Northern District of New York, granting the defendant's motions to dismiss what is, at its heart, my client's underinsured motorist or UIM claim. I trust that the Court is familiar with the salient facts of the case. This appeal is really all about the interpretation of some relatively new amendments to the Virginia UIM statute and the subrogation statute that goes along hand-in-hand with it. Although fully released with no further possible liability, Ms. Peters was required to be named in our complaint as a released defendant pursuant to that Virginia UIM statute, which requires that any litigation against your UIM carrier be presented to a jury as if it's the underlying motor vehicle case, not as if it's a breach of contract case or a breach of duty case against your UIM carrier. The District Court found that because that release, the full release of Ms. Peters, did not contain a subrogation notice required by the Virginia UIM statute, that the proper remedy was therefore total dismissal of my client's UIM claim. You say that there was a duty in the liability insurance, AAUP, to inform and that it wasn't just your client who had to inform Ms. Peters. But if that is so, you may have a cause of action against AAUP for not doing it, but why does that in any way affect the uninsured motorist insurance company, which had nothing to do with that? I mean, if Mrs. Peters was not given notice and she had a right to say, I don't want to accept the settlement on those terms and was not given that, why isn't that exactly what is going on? And so that she is out of the case and that the question then remains is just a simple contract action between you and the uninsured motorist. Your Honor, just to clarify, it's not my client's position that USAA owes a duty to my client. It's my client's position that the decision of the District Court that they erred and abused their discretion in not even considering that provision, subsection L of the Virginia UIM statute, that's now through the 2019 amendments, been amended to clarify that the liability carrier could send this notice, simply avail itself of the protective benefits of that statute that are there for Ms. Peters and her liability carrier by sending them this notice. The duty is to their insured. You're suggesting that the District Court should have ordered USAA to send notice? I'm suggesting, Your Honor, what we're asking this Court to consider is that the District Court's decision be reversed and that the interpretation of the statute be more consistent with the intent of the legislature and the little bit of case law that we do have out of Virginia. What are you looking for in the end in terms of the relief? It sounds like you want USAA to send the notice to Mrs. Peters. What we would like for... Is that what you want? For the case to continue? No, you want the case to continue, but what relief are you looking for? Are you looking for an order directing USAA to send notice to Mrs. Peters? What the requirement would be, Your Honor, is that USAA's duty to defend would continue unless and until it satisfies... USAA is not even a party to the lawsuit, right? That is correct. How do you get any relief against USAA if it's not a party to the lawsuit? Well, we're not asking for relief against USAA, we're asking... Sounds like you want a declaration or an order that USAA has certain obligations under the Virginia statute. Well, that the case would be remanded to the District Court and that their duty to defend would continue unless and until they satisfied the notice requirement, which would be consistent with... Right, so you want a declaration or a ruling with respect to USAA's obligations when USAA is not a party to the lawsuit. So how can the District Court do that? How can the District Court order any relief with respect to USAA without USAA having a chance to be heard? The way that it would work, Your Honor, is that USAA, if they were to satisfy the notice provision, by and through the counsel that they have hired for Ms. Peters would make a motion to withdraw as counsel, consistent with the Bjork v. Reyes case that we cite throughout Virginia. And then there would be motion practice in the District Court, I expect, between auto owners and the liability carrier as to whether or not their duty to defend is extinguished. The release that was executed in favor of Ms. Peters, why is that not a valid release? Was the general release unconditional? It was a full release of all claims, and she is in fact fully released from all claims. Her responsibilities or any obligations that may be there... So if she's fully released, why is she in the lawsuit? She is contained in the lawsuit in name only as a... She's continued in the lawsuit if she accepts that opportunity as part of a release if she is notified. But you can't expect her to be in the lawsuit when she's signed a complete release and she hasn't been given notice of the terms of that. So why is she there? Why isn't this now a perfectly clear suit between you and the uninsured motors, which is still there, and that's a matter of contract? Then the question of whether that can be brought in New York or has to be brought in Virginia or Michigan or something is another question. It may be that constitutionally you could still bring it in New York, but that's the argument that has to be made before us, hasn't it? She is named pursuant to the statute in name only. There is some law being presented before the Virginia Senate right now. It was presented on January 8th. It would enable my clients in Virginia to sustain a claim against their underinsured motorist carrier for bad faith. That hasn't yet passed the legislature, but it's yet another amendment that's been presented to the Virginia underinsured motorist statute. The Virginia statute doesn't really require notice. It requires that the torchfeasor agree to cooperate in the lawsuit that would be brought in her name, and she has not agreed to that. So it's sort of a subsidiary question as to whether she was given notice that she would have to cooperate. If she understood that she had to cooperate, she might have offered less money because the deal would have been less favorable to her. I respectfully disagree, Your Honor. The 2019 amendment says specifically that the certified mailing shall satisfy the entire subsection L of that Virginia underinsured statute. Doesn't the certified mailing say that she has to cooperate? It is simply that she receives notice of what the subrogation statute says. And the subrogation statute says she has to cooperate, right? It says that if she unreasonably fails to cooperate with the defense of the underinsured... That's what every cooperation agreement is. It's basically a fact witness. I mean, she could be subject to a subpoena in the contract case against the underinsured carrier. That would be a workaround, but the statute is requiring that she cooperate. If she unreasonably fails to cooperate, then the underinsured motorist carrier's subrogation rights could be reinstated, yes. But upon payment of the settlement proceeds, those subrogation rights were extinguished. And the only avenue that they could possibly be reinstated is if she unreasonably failed to cooperate with the defense. But if she is not in the case now for whatever reason of defects that were done, is this still a torts case that can be brought in New York because the uninsured motorist insurance says that we will defend torts cases all over the United States? Or is this simply a contract action between you and that insurance policy that your client and the insurance policy that they've signed, which is then subject to whatever limits there may be? I'm not sure whether that's constitutional or forum nonconvenience, because if it's just an insurance contract case between you, a Virginia resident, and a Michigan one, then what the hell is it doing in New York? So that's a thing that is puzzling to me. I agree with the district court's finding that if this release issue did not exist or if it was satisfied, the notice provision, then auto owners is included and have to appear here to defend the case. The contract causes of action were included in the claim. It was unclear to us whether or not the court would apply New York law or Virginia law. Those contract or bad faith claims, I believe that they are more suitable in Virginia if the Virginia legislature will pass this amendment to the Virginia underinsured motorist statute to allow that, Your Honor. Thank you. You have some time for rebuttal. We'll hear from the other parties. Thank you. May it please the court, my name is Hillary Banker, and I'm here on behalf of Defendant Appellee Kathleen Peters. Plaintiff commenced this case in the Northern District of New York against my client for negligence and bodily injury. As Your Honors have pointed out, she was given a full and final general release, which released her from any and all liability for losses or damage of any and every kind or nature arising out of the motor vehicle accident of September 29, 2016. This includes any potential subrogation claims. Based on this alone, the complaint against Ms. Peters must be dismissed. Plaintiff now states that Peters was only named as a released defendant pursuant to Virginia law and the contract for underinsured motorist coverage with auto owners. However, in this case she is not subject to suit as a released defendant because the release did not have the mandatory language required by the Virginia statute. Plaintiff acknowledges that the release did not contain this mandatory language. But he basically claims that, well, that clause should either be disregarded or, as the court pointed out, USAA should be forced to send the required notice, now belatedly, to Ms. Peters to advise her of her responsibilities under the Virginia code. They argue that this notice is actually intended to protect Defendant Peters, but that is not the case. If the notice was properly sent in the release, Ms. Peters would have to cooperate in the lawsuit, give a deposition, participate in discovery, meet with the attorneys, and it would be a very large obligation on her part to participate in this underlying lawsuit. Also, if the notice is sent to Ms. Peters, that opens her up to a subrogation claim. Right now, with the language of the general release she possesses, there can be no subrogation claim against her. There is no responsibility to participate in a lawsuit. Does the Virginia statute contemplate that, if appropriate notices and reservations were made, that Ms. Peters would be vulnerable to pay subrogation in cash? Yes, Your Honor. I believe there is. Because what the statute says is, if she unreasonably fails to cooperate. The duty to cooperate is not the duty to pay any money, it's to cooperate. Correct, Your Honor. But my position is that if auto owners deem that whatever she fails to do, if she misses a deposition, if she fails to return the defense attorney's call, I don't know what they might deem to be non-cooperation. How much money is involved in this whole thing? The USAA policy was $100,000. How much of the injury is alleged? Your Honor, I'll be honest, I have not done any dive into the plaintiff's actual injuries or what the claims are, because we made a motion to dismiss and I didn't. If enough money is involved, it may be in your client's interest, mutually with that of the plaintiff here, to agree to accept notice and agree to cooperate for a consideration of several thousand dollars. And then everybody might be happy and the insurance company might be satisfied. I agree, I'm not brokering a settlement here, but I'm wondering whether that may not relieve everybody of incurring many thousands of dollars of litigation expenses and put everybody in the position that the Virginia statute contemplates people should be in. Well, Your Honor, on behalf of Ms. Peters, my position is that she already got the remedy that she bargained for. She bargained for a general release. She bargained for no further obligations to participate in a lawsuit. She has continuing ability to contract as a free person, and I'm not sure I see why she can't agree to an amendment for consideration that would be satisfactory to her that would cure the problem if the insurance company could be compelled to agree to it on the basis of the terms of the insurance contract. Your Honor, what I'm concerned with is the subrogation clause, because right now we know that Ms. Peters has no further obligation to pay any money whatsoever. The auto owners could bring that subrogation claim against her. Now, even if she is able to establish that her failure to cooperate was not unreasonable, she still has to now defend that lawsuit, that subrogation claim, hire a defense lawyer, do all those things, which, as we sit right now, she does not have to do. It was plaintiff's obligation to ensure that he could make a claim under his UIM policy with auto owners. Now, if she had gotten that notice, which the Virginia statute says she must get, but she didn't, then she would be obligated, would she not? Yes, Your Honor. Because she could have rejected the settlement and been liable in other ways, or she could have accepted the settlement with those conditions. But your position is what she was given was a contractual right to be released, and she took that, and the fact that the statute may have asked her to do more if she were given notice doesn't matter. You're right, Your Honor. But the other side says she still obliged with the statute as if she had gotten notice, even though she didn't. Your Honor, I think the point is that the choice was taken away from her. Yes. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Adeline Medina on behalf of the defendant, Appali Auto Owners. The District Court properly dismissed the action as against auto owners. It is clear in this case there is no personal jurisdiction over auto owners relative to this case in the District Court of New York. Why should auto owners' constitutional right not to be sued in New York be diminished simply by the fact that some people failed to give notice to Mrs. Peters? You know, auto owners agreed to be sued in New York if Mrs. Peters were in it, and, you know, it's a good argument to say that without Mrs. Peters, then you are not in New York, but, you know, that's wheeling in the Constitution in a mighty heavy way in a situation where, after all, your client had agreed to be sued in New York in circumstances which are a mighty small difference from this. The auto owner, the insurer, did not consent, did not agree, did not submit to jurisdiction in New York for purposes of a claim of breach of contract against it. I understand that, and I'm just wondering if the fact that they had agreed to be sued in a tort suit, which would be identical to this, but with the addition of the presence as a participating party, Mrs. Peters, why that isn't enough to say, hey, at least as a constitutional matter, this isn't a very big deal claim. Now, you may also have a forum nonconvenience of saying, why the heck, without Mrs. Peters, why this should be in New York? But, you know, the Constitution is a pretty big deal, and to wheel it in seems to be an interesting argument. Well, certainly, it is our position the Constitution does not allow for exercise of personal jurisdiction over auto owners, as to the claims that are, you know, before the court. Now, we don't have Mrs. Peters in the case. Mrs. Peters was not provided notice, and therefore she cannot, as a precondition to the Virginia statute, she was not provided notice, and therefore she cannot be part of the claim. And, therefore, the only claim that plaintiff has is for breach of contract. Plaintiff does not have a claim against auto owners on a duty to defend and indemnify the underlying motor vehicle accident. That is an entirely separate claim, which I agree with your honors. The auto owners agreed to defend and indemnify within any, within the territories of the United States, but did not agree, and it's very explicitly clear in the contract. And you concede that New York is part of the United States? Of course. Well, it doesn't, it does not follow that auto owners would submit to jurisdiction pursuant to a breach of contract claim on a contract that was entered into in Virginia with a Virginia resident and a Michigan corporation domiciled or authorized to conduct business in Virginia. Under no circumstances did auto owners contemplate the possibility that it would be sued directly under this policy in any other state other than Virginia. And the policy and the provisions of the underinsured motorist provision of the policy explicitly provides that it has to be under the Virginia code. Does that policy contain notice to the policyholder of the terms of this Virginia statute, which seems to me odd, an odd statute? Is your question whether the policy provides a notice within... Does the policy issued by your client advise the policyholder of the obligation that you say the policyholder failed to perform? The policy expressly provides that the underinsured motorist provision would be applied pursuant to Virginia statute, and it expressly provides the section of the Virginia code, which is the section at issue, which is very specific. So the policyholder would have to go and look it up in the Virginia code? Yeah, I would agree with that, yes. It would look at the code because it's incorporated within the policy. It's so easy to get a copy of the Virginia code and understand the uninsured motorist statute. I feel like the code is very clear. It provides a precondition of notice. And if you look at the code, it's a... Does the Virginia statute require that your contract provide notice of this? No. It doesn't provide that auto owners is to be partly obligated to provide notice. And, in fact, in this case, auto owners was not involved. It does seem like a trap, doesn't it? I mean, you're giving notice to people. Somebody in another state, somebody represented by a lawyer in another state has this serious situation, and your policy has a condition, right? I suppose, you know, on the Internet, they do, but they're not practicing law in Virginia. I'm sort of wondering whether your contract would pass muster if there was an unfair consumer practices statute in Virginia, but I guess that's a different issue. And I would disagree because it's a contract entering into Virginia pursuant to Virginia law. So it is expected that two parties entering to a contract within the state of Virginia would contemplate that, especially when it's explicitly provided in the contract, you look at the policy before you issue a sort of claim. You read the policy. You give it to your attorney. Is there a plain language statute for insurance policies in Virginia? Say that again? Is there a plain language requirement? Can policies be written in plain language so that people can understand it who are not members of the bar? Is there a statute in Virginia that provides for that? Yes. I don't know the answer to that, Your Honor, but I believe that this policy in particular is very clear. It's very explicit. It's pretty plain. Well, it certainly isn't explicit because it's referring to something else, so that's the opposite of explicit. I would submit that your policy is going to be vulnerable on various terms in various places. I would submit that every policy provides for other statutes that apply to the policy. It's very rare where a policy lists or details verbatim all the statutes that apply. I believe when you enter into a contract and you understand what you're... I take it your argument is that whatever that statute read into your policy remains a matter of contract between you and Ms. Dix, and that that being just a matter of contract, even if that contract would have required you to tell Mrs. Peters or do something of that sort, is a contract issue and is not the court-tort issue which you agreed to have tried in New York. So that, as Jacob said, that's another issue. It's an issue of what that contractual suit, where it can be properly brought, can claim that you made a violation or not, but that doesn't answer the issue of whether this contract suit lies in New York. Absolutely, and it would actually go in favor of the dismissal that the district court granted in this case because it goes to show that we're now litigating a Virginia policy. We're litigating the application of Virginia law on a Virginia contract with a Virginia resident and a Virginia entity that performs business in Virginia. New York has no interest in adjudicating these claims. These claims... Well, whether New York has an interest in adjudicating these claims or not is a matter of forum nonconvenience. Whether you have a duty or a constitutional right to be freed from being in New York doesn't really depend on whether New York has an interest in the suit or not. That's a different issue. Well, it's part of the equation that the courts look at in determining whether or not there are minimum contracts, and it needs to be substantial justice. You're over your time. Thank you. We'll hear the rebuttal. Thank you, Your Honor. My rebuttal really sounds in equity in some of the things that the court talked about. We were very careful in settling this claim because it was a valuable claim. My client was very injured in this motor vehicle accident. He's had two surgeries, a lumbar and a cervical fusion. He's in his 40s, and he's looking at possibly being in a wheelchair very soon. So we were very careful in settling this case. It was a very valuable case. Auto owners had this release. Before my client saw this release, I ran this release by auto owners. And this statutory framework that's set up in Virginia is for the benefit of and contemplates that Ms. Peters be protected from subrogation, that her carrier be released from a duty to defend, and that the liability claim be able to be settled quickly with no prejudice to the underinsured claim. What we have here under the district court's interpretation is all of those benefits, everyone intended to benefit Ms. Peters free from subrogation. Auto owners has a mechanism right now where they, I'm sorry, not auto owners, but her liability carrier has a mechanism right now where their duty to defend could be extinguished. But my client is not able to use the underinsured motorist coverage that he has paid for as a loyal customer all this time. Well, why aren't they perfectly capable of doing so either in Michigan or in Virginia or in any place where auto owners is found? To credibly pursue that claim, Your Honor, and I agree with the court, there is not right now in Virginia a mechanism for directly suing your underinsured motorist carrier for bad faith or any kind of breach of contract claim. The only mechanism to prosecute this case is to make a release. Why can't you make a breach of contract claim whether the statute says or not? I mean, I don't understand. What is it that keeps you from bringing a contract claim? There is no such cause of action in Virginia, Your Honor. Why not? There is a whole plethora of case law there that says that you cannot maintain that type of action there. You must use the statute and name the release defendant in name and pursue the case. I believe the intention of the legislature is that the case is presented to a jury with no discussion of insurance claims. And at that point, if there is an award, a jury verdict in excess of the liability coverage, the award is automatically vacated against Ms. Peters and is enforceable against the underinsured carrier. Why does the statute apply at all if the statutory provision was not fulfilled with it? Why does the statute apply at all? Why isn't this a simple insurance contract between you and AOA? And that the statute, which comes into play if the statutory requirements are met, doesn't apply because the statutory requirements weren't met. It's our position, Your Honor, that the statutory requirements could still be met and that they are there to benefit Ms. Peters and her liability carrier, and the fact that they're not availing themselves of those benefits should not prejudice my client's underinsured motorist claim. Thank you. We have your argument. Thank you. We will reserve decision.